## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| SHEREK WEEKES ) <br> 2805 West Avenue ) <br> District Heights, MD 20747, ) <br> ) <br>     Plaintiff, ) <br> ) <br>  v. ) <br> ) <br> WASHINGTON METROPOLITAN ) <br> AREA TRANSIT AUTHORITY, and ) <br> ) <br> BENHAMIN COLEMAN ) <br> 5805 Chris Mar Avenue ) <br> Clinton, MD 20735, and ) <br> ) <br> JAMES POE ) <br> 5020 Long Cove Lane ) <br> Port Republic, MD 20676, and ) <br> ) <br> BRAND LONEY ) <br> 12511 White Drive ) <br> Silver Spring, MD 20904-3533 ) <br> ) <br>     Defendants. ) | Civil Action No. Case 1:24-cv-01596-ABJ <br><br> Jury Requested |

### AMENDED COMPLAINT

COMES NOW Plaintiff, Sherek Weekes (hereinafter "Plaintiff" or "Mr. Weekes"), by and through his undersigned counsel, and sues Washington Metropolitan Area Transit Authority (hereinafter "WMATA" or "Defendant WMATA"), Benjamin Coleman, James Poe, and Brand Loney, and for cause of action states as follows:

### NATURE OF THE CASE

1.    Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of

1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, et seq., and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter "Section 1981"), for relief from sexual harassment, gender and race discrimination and retaliation.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

3.     Venue is appropriate and is based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant WMATA, a municipality with its headquarters located in the District of Columbia.

## EXHAUSTION OF REMEDIES

4.     Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed a complaint against WMATA alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, et. seq., identified as EEOC Charge No.570-2019-01840.

5.     Plaintiff submitted a Form 5 Charge to the EEOC alleging that WMATA had violated Title VII of the Civil Rights Act of 1964, as amended, due to discrimination based upon his gender, retaliation and hostile work environment.

6.     On March 1, 2024, Plaintiff received a Dismissal and Notice of Rights letter from the Equal Employment Opportunity Commission stating that Plaintiff had ninety (90) days to file suit, if he so desired.

7.     On May 30, 2024, Plaintiff's complaint was timely filed within ninety (90) days of

receipt of the EEOC's "Notice of Right to Sue."

8.      Plaintiff has exhausted all of his administrative remedies.

## PARTIES

9.      Plaintiff is currently domiciled at 2805 West Avenue, District Heights, Maryland, 20747. Plaintiff is a resident of the State of Maryland and a United States citizen.

10.     Defendant WMATA is an instrumentality created by Congress to operate a mass transit system in the District of Columbia and the surrounding Metropolitan area and is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of its employees or agents and is therefore liable, pursuant to the doctrine of Respondent Superior.

11.     Benjamin Coleman, (hereinafter "Defendant Coleman" or "Mr. Coleman") is a management official of WMATA.  At all times relevant, Mr. Coleman was a Superintendent for WMATA and the direct supervisor of Plaintiff.

12.     James Poe, (hereinafter, Defendant Poe" or "Mr. Poe") is a management official of WMATA.  At all times relevant, Mr. Poe was an Assistant General Superintendent for WMATA, the direct supervisor of Mr. Coleman and Plaintiff's second line supervisor.

13.     Brand Loney, (hereinafter "Defendant Loney" or "Mr. Loney") was a management official of WMATA.  At all times relevant, Mr. Loney was a General Superintendent for WMATA, the direct supervisor of Mr. Poe and Plaintiff's third line supervisor.

14.     Defendant WMATA, Defendant Coleman, Defendant Poe, and Defendant Loney are hereinafter collectively referred to as "Defendants".  Defendant Coleman, Defendant Poe, and Defendant Loney are hereinafter collectively referred to as "Individual Defendants".

## FACTUAL BACKGROUND

15.     Plaintiff incorporates all information and allegations contained in the preceding

3

paragraphs as if fully set forth herein.

16.     Plaintiff was hired by Defendant WMATA in February 2007.  In 2013 Plaintiff was promoted to Supervisor of Railcar Maintenance and then to Assistant Superintendent.  At the time he filed his EEOC complaint, Plaintiff held the position of AA Mechanic.

17.     On or about June 7, 2021, Plaintiff sent an email to Defendant Poe, Defendant Coleman and other superiors expressing that Plaintiff believed that he was experiencing discrimination and that he was working in a hostile and toxic work environment.

18.     On or about June 15, 2021, Defendants decided to transferred Plaintiff to new a work location ("Shady Grove") and changed Plaintiff's work schedule or shift and days off.

19.     The transfer of Plaintiff to the Shady Grove location, which Defendants knew as the farthest work location from Plaintiff's home, severely inconvenience Plaintiff and cost him more money and time to travel to work.

20.     The abrupt changes to Plaintiff's work schedule and days off significantly disrupted Plaintiff's work-life balance, causing Plaintiff a severe amount stress, inconvenience, embarrassment, and humiliation.

21.     Defendants transferred Plaintiff to the Shady Grove location, and changed Plaintiff's work schedule and days off, without responding to Plaintiff's June 7, 2021, complaint or giving Plaintiff an opportunity to be heard.

22.     Unlike Plaintiff, Defendants treated Mr. Justin Nunez, (Hispanic) who became an Assistant Superintendent after Plaintiff, more favorable than Plaintiff.  Defendants gave Mr. Nunez cushy special assignments and access to particular information and to special meetings. Mr. Nunez was allowed to float between three different locations with no substantial responsibility. He reported in and left work as he pleased with little oversight from Defendants. Mr. James Poe moved

Mr. Nunez upstairs into the office suites while Mr. Weekes was directed to stay downstairs in an office on the first floor by Mr. James Poe for monitoring of Mr. Weekes. Mr. James Poe also coached Mr. Nunez to prepare him for the Assistant Superintendent position interview. Mr. Justin Nunez was given the questions and prepped for hours before the interview.

23.     On or about June 16, 2021, Plaintiff sent an email to Defendant WMATA's OEEOHotline, with the Subject "EEO Complaint - Workplace Retaliation".  In this email, Plaintiff complained against his transfer to Shady Grove and changes to his work schedule and days off. Plaintiff also alleged "a history, culture and cover up of favoritism, nepotism, cronyism, favoritism, workplace harassment and blatant EEO violations" against Defendant Poe.

24.     On or about June 18, 2021, Plaintiff met with officials from WMATA's OEEO office and verbally stated his complaints of discrimination, hostile work environment and retaliation.

25.     The June 18, 2021, complaint also involved sexual harassment against Mr. James Graham, who was an Assistant Superintendent. Plaintiff shared office with Mr. Graham who began making unwanted sexual advances toward Plaintiff. Mr. Graham often raised suggestive talks and questions with Plaintiff, including stating to Plaintiff, "Ask me anything and I'll tell you."  "I've been noticing things, and we can talk about it.", and "do you still fuck your wife"? On one occasion, Mr. Graham said to Plaintiff, "your shirt is out of your pants exposing your skin, you got a nice ass".   Whenever Mr. Graham was in the office he shared with Plaintiff, Mr. Graham locked the door, creating unease and discomfort for Plaintiff. On one occasion, Defendant Poe knocked on the closed door, and after it was opened for him, mockingly remarked, "You guys must be having a private conversation". Plaintiff reported the sexually harassment by Mr. Graham to his superiors, including Superintendent Armond Despertt and Supervisor Stacy Hatcher.

26.     In June 2021, Mr. James Poe labeled Mr. Weekes a troublemaker to other managers and supervisors in Mr. Weekes's work group and claimed that Plaintiff  was creating problems within his team

27.     In June 2021, Defendant Coleman and Defendant Poe elevated Mr. Michael Bruce, a Caucasian supervisor, who was Mr. Weekes' direct report, to undermine Plaintiff.  Mr. Bruce was given access to certain information, given special assignments and given notice of management decisions before Mr. Weekes. Mr. Coleman also failed to provide the documents and information necessary for Mr. Weekes to complete his work and instead provided same to Mr. Bruce. Mr. Weekes was stripped of his managerial duties and excluded from certain meetings, while Mr. Bruce was given Plaintiff's duties and included in all relevant meetings.

28.     Mr. Poe told Mrs. Weekes and Mr. Holmes that he wanted Michael Bruce on Dayshift and later moved the main senior Supervisor on Dayshift to another shop and replaced him with Mr. Bruce.

29.     On or about July 15, 2021, Plaintiff filed a formal Complaint of sexual harassment discrimination against a Mr. James Graham. In the complaint, Plaintiff alleged that he felt that Defendant Poe was complicit with the actions of the harasser.

30.     Defendant's Coleman, Defendant Loney and Defendant Poe had knowledge of Plaintiff's sexual harassment complaint and expressed dissatisfaction with Plaintiff for filing of the sexual harassment complaint.

31.     On or about July 16, 2021, Defendant Coleman and Defendant Poe, who had exclusive access to Plaintiff's personnel file, uploaded Plaintiff's bankruptcy judgment and other private and sensitive records and information about Plaintiff to Plaintiff's personnel file. Defendant Coleman and Defendant Poe who subsequently shared the information about Plaintiff with

Plaintiff's harasser.

32.     On or about July 21, 2021, Defendant Coleman conducted Plaintiff's performance evaluation and rated Plaintiff with "3-Solid Performer". In prior years, including 2019 and 2020, Plaintiff's performance evaluation ratings were "Exceptional" and "5-Execellent", respectively. The July 21, 2021, performance evaluation rating of "3-Solid Performer" caused Plaintiff to lose bonuses and merit increases.

33.     Subsequently Plaintiff asked Defendant Loney to review the "3-Solid Performer" rating that Plaintiff received from Mr. Coleman. On or about July 28, 2021, Plaintiff sent an email to Defendant Loney inquiring about Plaintiff's request for the performance evaluation review and complained that Plaintiff believed that the performance evaluation was retaliation against Plaintiff. Mr. Loney did not review or investigate Plaintiff's July 21, 2021 "3-Solid Performer" rating, and in fact Mr. Loney signed off on and approved the performance rating.

34.     In July 2021, Mr. Brand Loney forced Mr. Weekes to provide a doctor's note even though at the time it was not WMATA's policy and practice for management employees to provide a doctor's note when taking a couple days off for sickness.  Defendant Loney subsequently implemented a policy that required managers to provide doctor's notes when calling out sick.

35.     In July 2021, Mr. Brand Loney directed Assistant Superintendent Mr. Quincy Gant to deduct the two days' sick leave from Plaintiff's paycheck, even though it was WMATA's practice to pay managers their sick time without proof of being sick.

36.     In July 2021 Defendants mobilized and encourage co-workers of Plaintiff to alleged and file claims of sexual harassment against Plaintiff with Defendant WMATA's OEEO.

37.     During a meeting in August 2021 to discuss Plaintiff request to review  his "3-Solid Performer" rating, Mr.  Loney threatened to act against Plaintiff's employment. Defendant Loney

also ridiculed Plaintiff accent, asking Plaintiff if English was his first Language, despite been told previously. Defendant Loney also remarked that Plaintiff has issues processing information and that he would take action to ensure that Plaintiff does not have any employees directly reporting to Plaintiff.

38.     In September 2021, Defendant Poe transferred Mr. Weekes to an office location in Brentwood where Plaintiff  was subjected to constant camera surveillance and unfair monitoring.

39.     In October 2021, Defendants had OEEO investigated Plaintiff for "fermenting racial dissent", among employees.

40.     Around October 2021, Defendant Poe falsely accused Plaintiff of fraud and initiated an unauthorized fraud investigation against Plaintiff. The allegation of fraud was not substantiated by the investigation and Defendant WMATA claimed that it did not authorize or conduct the investigation.

41.     In December 2021, Mr. Wesley Guyton (Caucasian), a supervisor, was found to be stealing time, and recommend for termination. However, Mr. Loney assured him that he would be ok, and instead gave him a simple suspension.

42.     On or about December 22, 2021, OEEO determined that Plaintiff had violated its Equal Employment Opportunity (EEO) and Affirmative Action policy in connection with the July 2021 sexual harassment complaint against Plaintiff and violated it Anti-Sexual harassment policy in connection the October 2021 race discrimination investigation initiated against Plaintiff.

43.     Defendant WMATA's OEEO investigator who conducted the investigation and recommended the determination of violations against Plaintiff was a close associate of Defendant Loney and was biased against Plaintiff. On one occasion, the investigator was overhead calling Plaintiff, "a problem child".

44.     In January 2022, Plaintiff along with Mr. Justin Nunez (Hispanic) submitted applications for a Superintendent Job. In response, Defendant Loney lifted the qualification requirements, making it easier for Mr. Nunez, who did not have a 4-year degree to qualify for the position and to avoid  scrutiny. Mr. Nunez was given an interview and Mr. Nunez was awarded the Job. Mr. Weekes was not given an interview even though he had the same skills and qualifications, plus he also possesses a 4-year degree.

45.     In January 2022, Defendant Loney again transferred Plaintiff to a department or work unit with fewer opportunities for advancement.

46.     On or about February 4, 2022, Defendant Loney send Plaintiff a memorandum notifying Plaintiff that Plaintiff was issues "a 30-working day suspension for your misconduct which you will serve from February 7, 2022, thru March 8, 2022", and further notifying Plaintiff that he is "being issued a Final Warning that any future policy violation may result in disciplinary action up to and including termination."

47.     Defendant WMATA's policies and practice provide that an employee may use available vacation leave during suspension. Additionally, during suspension, management employees such as Plaintiff retain access to phones, emails, network access and other trappings of continuing employment.

48.     Defendant Loney refused to approved Plaintiff's use of available vacation leave during Plaintiff's working suspension and terminated Plaintiff's access to Defendant WMATA's assigned cell phone, email account, and network access. In contrast, when Mr. Manuel Araujo (Caucasian) or Mr. Wesley Guyton (Caucasian) were suspended, they were not made to turn over their WMATA issues cell phones and their email and network access were not revoked.

49.     In March 2022, Mr. Loney refused to discipline or terminate Mr. John Coon, a

Caucasian Superintendent, who was recommended for termination by the Office of Inspector General due to poor job performance.

50.     On March 9, 2022, upon returning to work from the 30-day working suspension, Defendant Loney issued Plaintiff another memorandum notifying Plaintiff that Plaintiff was fired from his position as Assistant Superintendent.

51.     Between December 21, 2021, and February 28, 2023, Mr. Sherek Weekes applied for thirty-six (36) positions but was not selected for any of the positions. Of the thirty-six (36) positions, Mr. Weekes was interviewed for the Quality Assurance SR Associate position and scheduled to be interviewed for the Car Equipment Training Instructor and the Project Coordinator positions. However, Defendant Loney directed the hiring managers to cancel Mr. Weekes' interviews for the Car Equipment Training Instructor and the Project Coordinator positions.

52.     Defendant Poe has allowed and continues to allow Mr. William Towsend (Caucasian) - Supervisor, Mr. Robert Keach (Caucasian) – Supervisor, and Mr. Jason Kane (Caucasian), and Mr. John Tsampos (Caucasian) – Supervisor, to work unlimited overtime and, in many instances, to work from home, while denying Plaintiff the same opportunities.

**COUNT ONE**
**Sexual Harassment - Hostile Work Environment in Violation of Title VII**
**(Against Defendant WMATA)**

53.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

54.     Plaintiff has exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

55.     Defendant WMATA is a "person" within the meaning of 42 U.S.C. § 1983.

56.     At all times relevant to this Complaint, Defendant WMATA and its agents were

acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

57.     Plaintiff is a member of a protected class, as he is a male and the harassment against Plaintiff was based on his sex as a male.

58.     Defendant discriminated against Plaintiff because of sex in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating, or failing to prevent the sex-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

59.     During his employment, Plaintiff was subjected to offensive and unwelcome sexual comments and advances by Defendant WMATA's Assistant Superintendent, Mr. Graham. Plaintiff clearly indicated that this conduct was unwelcome. Plaintiff did not solicit or incite the conduct, and he perceived the conduct to be offensive and/or undesirable.

60.     This conduct and other incidents of harassment described herein were because of Plaintiff's gender and inappropriately based on sex.

61.     The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and alter the condition of Plaintiff's employment and created an abusive working environment.

62.     Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable man in Plaintiff's position.

63.     Defendant WMATA knew or should have known of the harassment described herein and Mr. Graham's propensity to engage in such sex-based harassment and failed to implement effective, immediate or remedial action.

64.     The harassment directed at Plaintiff was either intended to cause him severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it

would cause such distress. Defendant WMATA is, therefore, liable to Plaintiff for all damages proximately resulting from the distress he has suffered relating to the conduct of Defendant WMATA.

65.     By failing to take appropriate and effective remedial action against Mr. Graham, Defendant WMATA acted with malice or with reckless or callous indifference to Plaintiff's complaints.

66.     As a direct and proximate cause of Defendant WMATA's action or inaction, Plaintiff suffered substantial damages, including, but not limited to, loss of income, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

67.     Due to Defendant WMATA's actions or inactions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

68.     Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT TWO
### Gender Discrimination in Violation of Title VII
### (Against Defendant WMATA)

69.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

70.     Plaintiff has exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

71.     Defendant WMATA is a "persons" within the meaning of 42 U.S.C. § 1983.

72.     At all times relevant to this Complaint, Defendants and their agents were acting

under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

73.     Plaintiff is a member of a protected class, as he is a male.

74.     Defendant discriminated against Plaintiff because of his gender in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the gender-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

75.     During his employment, Plaintiff was consistently harassed by Defendant, by and through the actions of Mr. Graham and other WMATA management officials as well as treated unfavorably as compared with female similarly situated co-workers and colleagues.

76.     Furthermore, during his employment, Plaintiff's supervisor subjected him to a barrage of offensive and unwelcome comments. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct, and he perceived the conduct to be offensive and/or undesirable.

77.     This conduct and other incidents of harassment described above were because of Plaintiff's gender.

78.     The harassment directed at Plaintiff was either intended to cause him severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress he has suffered relating to the conduct of Defendant.

79.     Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

80.     Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff in any way contributing any negligence thereto.

**COUNT THREE**
**Retaliation Based On Protected Activity in Violation of Title VII**
**(Against Defendant WMATA)**

81.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

82.     Defendant WMATA is a "persons" within the meaning of 42 U.S.C. § 1983.

83.     At all times relevant to this Complaint, WMATA and their agents were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

84.     Plaintiff has exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

85.     Plaintiff complained verbally and in writing to WMATA management and officials regarding his belief that he was being subjected to sexual harassment and discriminatory conduct based upon his gender and in retaliation for his prior EEO activity.

86.     Plaintiff filed a complaint with WMATA's OEEO regarding his claims of discrimination based upon gender and a hostile work environment, as well as retaliation for his participation in protected activity.

87.     WMATA subjected Plaintiff to the aforementioned adverse employment actions because of his participation and opposition to unlawful and discriminatory employment practices in violation of Title VII.

88.     The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

89.     Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar, or any other adverse treatment.

90.     Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

91.     WMATA's unlawful conduct created a climate of fear and intimidation for Plaintiff and other employees, which created a chilling effect upon other employees' willingness to engage in protected activity.

92.     WMATA's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

93.     WMATA's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendants' discriminatory conduct.

94.     WMATA is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

95.     As a direct and proximate cause of WMATA's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

96.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering.

97.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity,

now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT FOUR
### Retaliation Based On Protected Activity in Violation of Section 1981
### (Against Individual Defendants)

98.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

99.     Individual Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

100.    At all times relevant to this Complaint, Individual Defendants were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

101.    Plaintiff has exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

102.    Plaintiff complained verbally and in writing to Individual Defendants regarding his belief that he was being subjected to sexual harassment and discriminatory conduct based upon his sex and gender and in retaliation for his prior EEO activity.

103.    Plaintiff filed a complaint with WMATA's OEEO regarding his claims of discrimination based upon gender and a hostile work environment, as well as retaliation for his participation in protected activity.

104.    Individual Defendants were displeased that Plaintiff asserted and filed claims of hostile work environment, sexual harassment and discrimination and subjected Plaintiff to adverse employment actions, including transferring Plaintiff to a new work location, abruptly changing Plaintiff's works schedules, and days-off, giving Plaintiff a performance rating of "3-Solid Performer", denying Plaintiff work assignments , excluding Plaintiff from required meetings, disclosing Plaintiff's sensitive personnel information, denying Plaintiff sick pay,

alleging fraud against Plaintiff and conducting a sham investigation against Plaintiff, denying

Plaintiff the Superintendent position for which he was more qualified than the selectee and

terminating Plaintiff's employment, among other adverse employments actions enumerated in

the foregoing paragraphs under Factual Allegations.

105.    The adverse retaliatory actions to which Plaintiff has been subjected are a direct

result of Plaintiff having previously engaged in protected EEO activity.

106.    Similarly situated employees (no known prior EEO activity) were not subjected to

the same, similar, or any other adverse treatment, like Plaintiff.

107.    Other employees who were similarly situated, but  members  of  a  different

protected class than Plaintiff, have received different terms and conditions of employment.

108.    Individual Defendants' unlawful conduct created a climate of fear and

intimidation for Plaintiff and other employees, which created a chilling effect upon other

employees' willingness to engage in protected activity.

109.    Individual Defendants' unlawful conduct negatively impacted the terms,

conditions, and privileges of Plaintiff's employment.

110.    Individual Defendants' retaliatory conduct has been intentional, deliberate,

willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his

participation and opposition to Individual Defendants' discriminatory conduct.

111.    Individual Defendants are directly liable for their discriminatory acts or omissions

while acting within our outside the course and scope of his employment with WMATA.

112.    As a direct and proximate cause of Individual Defendants' conduct alleged

throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and

monetary damages – including, but not limited to, past and future loss of income, benefits,

promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

113.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering.

114.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT FIVE
## Race Discrimination in Violation of Section 1981
### (Against Individual Defendants)

115.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

116.     Individual Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

117.     At all times relevant to this Complaint, Individual Defendant were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

118.     Plaintiff has exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

119.     Plaintiff is a member of a protected class on the basis of his race.  He is an African American male.

120.     Plaintiff, in all respects, was performing her job in a manner that was consistent with WMATA's legitimate business expectations.

121.     Individual Defendants subjected Plaintiff to adverse employment actions because of his race as an African American.

122.     The adverse employment actions to which Plaintiff has been subjected are

enumerated in the foregoing paragraphs, including, but not limited to, denial of the Superintendent and other open positions for which Plaintiff applied, abrupt transfers and changes to Plaintiff work schedules, denial of assignments and management duties, docking of Plaintiff's pay, and termination of Plaintiff's employment.  Similarly situated employees (no known prior EEO activity) were treated more favorable than Plaintiff.

123.    Other employees who were similarly situated, but  members  of  a  different protected class than Plaintiff, have received different terms and conditions of employment.

124.    Individual Defendants' unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

125.    Individual Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race as an African American.

126.    Individual Defendants are directly liable for their discriminatory acts or omissions while acting within or outside the course and scope of their employment with WMATA.

127.    As a direct and proximate cause of Individual Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

128.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering.

129.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory damages in a fair and just amount;

b.    Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c.    Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.    Award reasonable attorney fees, costs, and expenses with interest incurred for this action;

e.    Order Defendant to institute a policy and procedure to be implemented against discrimination;

f.    Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g.    Supervisory training for the supervisors at issue herein;

h.    Award equitable, declaratory, and injunctive relief; and

i.    Award such other and further relief as this Honorable Court deems just and proper.

## Equitable Relief

132.    Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

133.    Because of the actions alleged herein, the continued employment of the

supervisors at issue herein without training in equal employment opportunity law, rules and regulations, clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through its agents, servants, and employees.

## JURY
## DEMAND

134.    Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

August 28, 2024,                              Respectfully submitted,

By: */s/ Donna Williams Rucker*
Donna Williams Rucker
(Bar No. 446713)
Tully Rinckey, PLLC
2001 L Street, NW, Suite 902,
Washington, DC 20036
(202) 787-1900
(202) 640-2059
drucker@fedattorney.com